UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| DIANA L. SAYERS,<br><br>                        Plaintiff,<br><br>       v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of<br>Social Security Administration,<br><br>                        Defendant. | 3:14-cv-00253-RCJ-WGC<br><br>**REPORT & RECOMMENDATION OF<br>U.S. MAGISTRATE JUDGE** |

This Report and Recommendation is made to the Honorable Robert C. Jones, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4. Before the court is Plaintiff Diana L. Sayers' Motion for Reversal and/or Remand. (Doc. #19.)[1] The Commissioner filed a Cross-Motion to Affirm and Response to Plaintiff's Motion for Reversal and/or Remand. (Docs. # 20/21.)[2]

After a thorough review, the court recommends that Plaintiff's motion be granted and the matter be remanded to the ALJ consistent with this Report and Recommendation. In addition, it is recommended that the Commissioner's cross-motion to affirm be denied.

## **I. BACKGROUND**

Plaintiff protectively filed an application for Supplemental Security Income (SSI) alleging disability due to chronic obstructive pulmonary disease, emphysema, Graves' disease, bipolar disorder, post-traumatic stress disorder (PTSD), and arthritis. (Administrative Record (AR) 137-42.) The application is dated November 19, 2010. (AR 137-42.) The Commissioner

---

[1] Refers to court's docket number.

[2] These documents are identical.

1  notes that Plaintiff began the SSI application on May 20, 2010, but did not complete it until
2  November 19, 2010; however, the agency accepted the earlier date as the date of filing.
3  (Docs. # 20/21 at 2 n. 1.) Plaintiff initially alleged a disability onset date of February 3, 2005;
4  however, the Social Security Act precludes payments of SSI benefits prior to the month the
5  application was protectively filed. 42 U.S.C. § 1382(c)(7); 20 C.F.R. § 416.355. As a result,
6  Plaintiff subsequently amended her alleged onset date to coincide with the protective filing date.
7  (AR 1058.) Plaintiff's application for SSI benefits was denied initially and on reconsideration.
8  (AR 66-73.)
9  　　　Plaintiff requested a hearing before an Administrative Law Judge (ALJ). (*See* AR 79-80.)
10 On January 7, 2013, Plaintiff appeared, represented by counsel, for her hearing before the ALJ.
11 (AR 1055-82.) Plaintiff testified, and the ALJ also took testimony from a vocational expert (VE).
12 (*Id*.) On January 17, 2013, the ALJ issued a decision finding Plaintiff not disabled. (AR 25-38.)
13 Plaintiff appealed and the Appeals Council denied review on March 17, 2014. (AR 8-11.) Thus,
14 the ALJ's decision became the final decision of the Commissioner.
15 　　　Plaintiff now appeals the decision to the district court. (Doc. # 19.) Plaintiff asserts one
16 argument: that the ALJ's decision should be reversed because the ALJ failed to discuss and offer
17 any reason, let alone a specific and legitimate reason, for rejecting the opinion of consultative
18 examining psychologist, Dr. Sheri Skidmore. (*Id*.) Dr. Skidmore opined that Plaintiff was limited
19 to simple, one- or two-step tasks. (*Id*. at 5-6.) This was contradictory and more restrictive than
20 the opinion of the other consultative examining psychologist, Dr. Monique Stanfield, who opined
21 that Plaintiff could understand, remember, and carry out simple, detailed and some complex
22 tasks. (*Id*. at 6.) It was also contrary to the opinions of the consultative reviewing psychologists,
23 Dr. Pastora Roldan and Dr. March Richman, who filled out check-the-box forms, finding
24 Plaintiff did not suffer from any severe mental impairment. (*Id*. at 6.)
25 　　　Plaintiff asserts that if Dr. Skidmore's opinion that she is limited to simple, one- and two-
26 step tasks is credited, this would preclude all of the jobs identified by the VE and ALJ that
27 Plaintiff is capable of performing. (*Id*. at 8.) The past relevant work identified by the VE and
28 ALJ all have a Dictionary of Occupational Title (DOT) Reasoning Level 3, which Plaintiff

asserts is inconsistent with simple, one- and two-step tasks, and the jobs identified at step five in the alternative all require a DOT Reasoning Level 2. (*Id*.) Plaintiff argues that the Ninth Circuit's district courts are split as to whether a limitation to simple, one- and two-step tasks is consistent with jobs requiring higher than Reasoning Level 1. (*Id*.) Plaintiff takes the position that they are inconsistent. (*Id.*)

Finally, Plaintiff asserts that the ALJ afforded great weight to the opinions of both of the consultative reviewing physicians, but those opinions cannot by themselves constitute substantial evidence that justifies rejecting the opinion of an examining physician. (*Id*. at 9.) In addition, she asserts that these physicians' opinions are entitled to less weight because they consist of check-the-box forms, and both of the physicians indicated that the record before them did not contain sufficient evidence to render an opinion. (*Id*. at 9-10.) Plaintiff requests that Dr. Skidmore's opinions be credited as true, and that the court reverse the ALJ's decision and remand for the payment of benefits, or alternatively, that the court remand for further proceedings to obtain an accurate functional assessment to include all of Plaintiff's functional limitations. (*Id*. at 10.)

The Commissioner, on the other hand, first argues that the ALJ was not required to consider Dr. Skidmore's opinion because it was rendered well before Plaintiff's amended onset date in 2010, and therefore, is neither significant nor probative evidence. (Docs. # 20/21 at 4-5.) In addition, the Commissioner argues that the evidence was neither significant nor probative because Dr. Skidmore only relied on Plaintiff's self-reports in rendering her opinion, and the ALJ found Plaintiff was not credible. (*Id*. at 5-6.) The Commissioner maintains that the ALJ properly relied on the opinions of consultative, examining psychologist, Dr. Stanfield, and the agency's consultative, reviewing physicians, Dr. Roldan and Dr. Richman, in determining Plaintiff's mental impairments were not severe. (*Id*. at 6.) To the extent Plaintiff argues that Drs. Roldan and Richman found insufficient evidence in the record to render an opinion, the Commissioner contends that the doctors did in fact give specific opinions as to Plaintiff's mental functioning. (*Id*. at 7.) The Commissioner asserts that the doctors were likely indicating that

1  Plaintiff had provided insufficient evidence to establish her alleged impairments were severe.
2  (*Id*.)
3      Next, the Commissioner argues that even if the ALJ erred in failing to set forth specific
4  and legitimate reasons for rejecting Dr. Skidmore's opinions, any error is harmless. (*Id*. at 9-11.)
5  The Commissioner claims that even if it were assumed that Plaintiff was limited to simple, one-
6  and two-step tasks, Plaintiff would still be able to perform the unskilled jobs identified by the
7  ALJ at step five. (*Id*. at 9.) The jobs of assembler and sub-assembler identified at step five have a
8  specific vocational preparation (SVP) level of two, are unskilled work which is defined as
9  involving simple duties that can be learned on the job in a short time, and have a DOT Reasoning
10  Levels 2. (*Id*. at 10.) The Commissioner maintains that a limitation to simple tasks is consistent
11  with Reasoning Level 2 jobs. (*Id*. at 11.)

## II. STANDARD OF REVIEW

13      The court must affirm the ALJ's determination if it is based on proper legal standards and
14  the findings are supported by substantial evidence in the record. *Gutierrez v. Comm'r Soc. Sec.*
15  *Admin.*, 740 F.3d 519, 522 (9th Cir. 2014) (citing 42 U.S.C. § 405(g)). "Substantial evidence is
16  'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a
17  reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez*, 740 F.3d at 523-
18  24 (quoting *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012)).
19      To determine whether substantial evidence exists, the court must look at the record as a
20  whole, considering both evidence that supports and undermines the ALJ's decision. *Gutierrez*,
21  740 F.3d at 524 (citing *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001)). The court "'may
22  not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*,
23  759F.3d 995, 1009 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035
24  (9th Cir. 2007)). "'The ALJ is responsible for determining credibility, resolving conflicts in
25  medical testimony, and for resolving ambiguities.'" *Id*. (quoting *Andrews v. Shalala*, 53 F.3d
26  1035, 1039 (9th Cir. 1995)). "If the evidence can reasonably support either affirming or
27  reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner."
28  *Gutierrez*, 740 F.3d at 524 (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)).

That being said, "a decision supported by substantial evidence will still be set aside if the ALJ did not apply proper legal standards." *Id*. (citing *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009); *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)). In addition, the court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010 (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

### III. DISCUSSION

**A. Five-Step Sequential Process**

Under the Social Security Act, "disability" is the inability to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). A claimant "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. §  1382c(a)(3)(b).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. 20 C.F.R. § 404.1520 and § 416.920; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). If at any step the Social Security Administration (SSA) can make a finding of disability or nondisability, a determination will be made and the SSA will not further review the claim. 20 C.F.R. §  404.1520(a)(4) and §  416.920(a)(4); *see also Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). "'The burden of proof is on the claimant at steps one through four, but shifts to the Commissioner at step five.'" *Garrison*, 759 F.3d at 1011 (quoting *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009)).

In the first step, the Commissioner determines whether the claimant is engaged in "substantial gainful activity"; if so, a finding of nondisability is made and the claim is denied.

20 C.F.R. § 404.1520(a)(4)(i), (b); § 416.920(a)(4)(i); *Yuckert*, 482 U.S. at 140. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to step two.

The second step requires the Commissioner to determine whether the claimant's impairment or a combination of impairments are "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c) and § 416.920(a)(4)(ii); *Yuckert*, 482 U.S. at 140-41. An impairment is severe if it significantly limits the claimant's physical or mental ability to do basic work activities. *Id*. Basic work activities are "the abilities and aptitudes necessary to do most jobs[,]" which include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521 and § 416.921. If a claimant's impairment is so slight that it causes no more than minimal functional limitations, the Commissioner will find that the claimant is not disabled. 20 C.F.R.§ 404.1520(a)(4)(ii), (c) and 416.920(a)(ii). If, however, the Commissioner finds that the claimant's impairment is severe, the Commissioner proceeds to step three. *Id*.

In the third step, the Commissioner looks at a number of specific impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listed Impairments) and determines whether the impairment meets or is the equivalent of one of the Listed Impairments. 20 C.F.R. § 404.1520(a)(4)(iii), (d) and § 416.920(a)(4)(iii), (c). The Commissioner presumes the Listed Impairments are severe enough to preclude any gainful activity, regardless of age, education, or work experience. 20 C.F.R. § 404.1525(a). If the claimant's impairment meets or equals one of the Listed Impairments, and is of sufficient duration, the claimant is conclusively presumed disabled. 20 C.F.R. § 404.1520(a)(4)(iii), (d), § 416.920(d). If the claimant's impairment is severe, but does not meet or equal one of the Listed Impairments, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv), (e), (f) and § 416.920(a)(4)(iv), (e), (f). Past relevant work is that which a claimant performed in the last fifteen years, which lasted long enough for him or her to learn to do it, and was substantial gainful activity. 20 C.F.R.

1   § 404.1565(a) and § 416.920(b)(1).

2   In making this determination, the Commissioner assesses the claimant's residual
3   functional capacity (RFC) and the physical and mental demands of the work previously
4   performed. *See id.;* 20 C.F.R. § 404.1520(a)(4); *see also Berry v. Astrue*, 622 F.3d 1228, 1231
5   (9th Cir. 2010). RFC is what the claimant can still do despite his or her limitations. 20 C.F.R.
6   § 1545 and § 416.945. In determining RFC, the Commissioner must assess all evidence,
7   including the claimant's and others' descriptions of limitation, and medical reports, to determine
8   what capacity the claimant has for work despite the impairments. 20 C.F.R. § 404.1545(a) and
9   § 416.945(a)(3).

10  A claimant can return to previous work if he or she can perform the "actual functional
11  demands and job duties of a particular past relevant job" or "[t]he functional demands and job
12  duties of the [past] occupation as generally required by employers throughout the national
13  economy." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (internal quotation marks and
14  citation omitted).

15  If the claimant can still do past relevant work, then he or she is not disabled for purposes
16  of the Act. 20 C.F.R. § 404.1520(f) and § 416.920(f); *see also Berry*, 62 F.3d at 131 ("Generally,
17  a claimant who is physically and mentally capable of performing past relevant work is not
18  disabled, whether or not he could actually obtain employment.").

19  If, however, the claimant cannot perform past relevant work, the burden shifts to the
20  Commissioner to establish at step five that the claimant can perform work available in the
21  national economy. 20 C.F.R. § 404.1520(e) and § 416.290(e); *see also Yuckert*, 482 U.S. at 141-
22  42, 144. This means "work which exists in significant numbers either in the region where such
23  individual lives or in several regions of the country." *Gutierrez*, 740 F.3d at 528. If the claimant
24  cannot do the work he or she did in the past, the Commissioner must consider the claimant's
25  RFC, age, education, and past work experience to determine whether the claimant can do other
26  work. *Yuckert*, 482 U.S. at 141-42. The Commissioner may meet this burden either through the

27
28

testimony of a vocational expert or by reference to the Grids. *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999).[3]

If at step five the Commissioner establishes that the claimant can do other work which exists in the national economy, then he or she is not disabled. 20 C.F.R. § 404.1566. Conversely, if the Commissioner determines the claimant unable to adjust to any other work, the claimant will be found disabled. 20 C.F.R. § 404.1520(g); *see also Lockwood*, 616 F.3d at 1071; *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009).

**B. ALJ's Findings in this Case**

In the present case, the ALJ applied the five-step sequential evaluation process and found at step one that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of May 20, 2010. (AR 30.)

At step two, the ALJ found it was established Plaintiff suffered from the following severe impairments: chronic obstructive pulmonary disease, degenerative disc disease, and obesity. (AR 30.) The ALJ concluded that Plaintiff's medically determinable mental impairments of PTSD and bipolar disorder do not cause more than minimal limitations in Plaintiff's ability to perform basic mental work activities, and therefore, are not severe. (AR 31.) The ALJ noted that Plaintiff only had mild limitations in activities of daily living as she could take care of her personal needs, do household chores, prepare meals daily, take care of household pets, use public transportation, walk to get around, and shop in stores. (AR 31.) She likewise had only mild limitations in social functioning as she spent time with her son and his fiancé, goes out to dinner once a month, has several friends, regularly attends medical appointments, shops in stores and uses public transportation. (AR 31.) Finally, the ALJ concluded Plaintiff had no more than a mild limitation

---

[3] "The grids are matrices of the four factors identified by Congress—physical ability, age, education, and work experience—and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy." *Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010) (internal quotation marks and citation omitted). The Grids place jobs into categories by their physical-exertional requirements, and there are three separate tables, one for each category: sedentary work, light work, and medium work. 20 C.F.R. Part 404, Subpart P, Appx. 2, § 200.00. The Grids take administrative notice of the numbers of unskilled jobs that exist throughout the national economy at the various functional levels. *Id*. Each grid has various combinations of factors relevant to a claimant's ability to find work, including the claimant's age, education and work experience. *Id*. For each combination of factors, the Grids direct a finding of disabled or not disabled based on the number of jobs in the national economy in that category. *Id*.

in concentration, persistence or pace, as she could pay her bills, count change, could pay attention as needed, follows spoken instructions adequately and regularly watches television. (AR 32.)

In reviewing the alleged mental impairments, the ALJ stated that she considered not only Plaintiff's subjective complaints but the evidence in the record. (AR 32.) The ALJ indicated that the treatment records included regular and repeat mini-mental status examinations which showed normal affect, judgment and mood, and she received a Global Assessment Functioning (GAF) score of 64 at her February 2011 consultative examination, which indicates only mild symptoms or mild difficulty in social, occupational or school functioning. (AR 32.) The ALJ also considered the February 2011 and July 2011 psychological consultant assessments which found Plaintiff had no severe impairments. (AR 32.) The ALJ discussed the opinion of Dr. Stanfield, who performed the consultative mental status examination of Plaintiff. (AR 32.) Dr. Stanfield found Plaintiff might have difficulty with some complex tasks secondary to low intelligence, but found no social or concentration restrictions were appropriate. (AR 32-33.) The ALJ found that these findings demonstrated Plaintiff was highly functional and did not have severe mental impairments, according great weight to the consultative reviewing psychologists and partial weight to Dr. Stanfield's opinion. (AR 33.)

At step three, the ALJ the ALJ concluded Plaintiff did not have an impairment or combination of impairments that meet or medically equal the severity of one of the Listed Impairments. (AR 33.)

At step four, the ALJ found Plaintiff has the RFC to perform light work, as defined in 20 C.F.R. § 416.967(b), except she may only perform occasional postural activities, must avoid extremes of cold and heat, pulmonary irritants and hazards such as working at heights or operating dangerous/moving machinery. (AR 33.) Consistent with her conclusions at step two, the ALJ did not impose any mental function limitations with Plaintiff's RFC. The ALJ then concluded Plaintiff is capable of performing her past relevant work as a hotel desk clerk, telemarketer, and waitress. (AR 36.)

The ALJ made an alternative step-five finding that, considering Plaintiff's age, education, work experience and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can also perform: assembler (DOT 706.684-022), and sub-assembler (DOT 729.684-054). (AR 37-38.) Both of these jobs are considered light, unskilled work, with SVP 2 and Reasoning Level 2. (AR 38.)

Accordingly, the ALJ found Plaintiff not disabled since her alleged onset date. (AR 38.)

**C. Dr. Skidmore's Opinion**

Plaintiff is correct that the ALJ does not accept or reject or otherwise mention Dr. Skidmore's opinion that Plaintiff is limited to simple, one- and two-step tasks.

Dr. Skidmore performed a mental status examination of Plaintiff on September 24, 2007. (AR 485-90.) There were no records available for Dr. Skidmore to review. (AR 485.) Thus, Dr. Skidmore relied only on Plaintiff's self-reporting and her examination of Plaintiff in forming her opinions. (AR 485.) Dr. Skidmore indicated that Plaintiff was oriented and her mood was pleasant. (AR 486.) Based on her examination of Plaintiff, Dr. Skidmore opined Plaintiff "could at least do simple one or two step tasks" and that she could take care of herself and her living quarters. (AR 488.) She is able to get along with supervisors, coworkers and the public. (AR 488.) In addition, Dr. Skidmore opined that Plaintiff can "concentrate for at least simple one or two step tasks." (AR 488.) She assessed her as having a GAF score of 63. (AR 488.)

Despite the Commissioner's contention that the ALJ was not required to discuss Dr. Skidmore's opinions because they were not significant or probative as they were rendered prior to the alleged amended onset date, the Social Security Regulations provide that in determining disability, the agency "will always consider the medical opinions in your case record together with the rest of the relevant evidence" received, and "[r]egardless of its source, we will evaluate every medical opinion we receive." 20 C.F.R. § 404.1527(b), (c); *see also Tommasetti v. Astrue,* 533 F.3d 1035, 1041 (9th Cir. 2008) ("The ALJ must consider all medical opinion evidence."). The Ninth Circuit has explicitly held that "[w]here an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014)

(citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)). "In other words, an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Id*. This was most recently confirmed by the Ninth Circuit in *Marsh v. Colvin,* where the court held that the ALJ erred when he did not even mention the treatment notes and assessment of one of the claimant's treating physicians, let alone give specific and legitimate reasons supported by substantial evidence for rejecting the opinion. *Marsh v. Colvin*, --- F.3d ---, 2015 WL 4153858, at * 1-2 (9th Cir. July 10, 2015).

"'In disability benefits cases ... physicians may render medical, clinical opinions, or they may render opinions on the ultimate issue of disability—the claimant's ability to perform work.'" *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). Courts "'distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians).'" "'If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence.'" *Id*. Because a court must give 'specific and legitimate reasons' for rejecting a treating [or examining] doctor's opinions, it follows even more strongly that an ALJ cannot in its decision totally ignore a treating [or examining] doctor and his or her notes, without even mentioning them." *Marsh*, 2015 WL 4153858, at * 2 (citing *Garrison*, 759 F.3d at 1012).

Here, like *Marsh,* the ALJ did not even mention Dr. Skidmore's mental functional assessment of Plaintiff finding that Plaintiff is limited to simple, one- and two-step tasks, let alone provide specific and legitimate reasons for rejecting this opinion. As such, the ALJ erred. *See Marsh*, 2015 WL 4153858, at * 2 ("Here the ALJ gave no reasons for not mentioning Dr. Betat or his SOAP notes. That was error.").

The court must now consider whether that error is harmless, as the Commissioner argues.

- 11 -

*Marsh* provided some guidance to district courts in handling the harmless error analysis in this context. *See id*. at * 2-3. First, the Ninth Circuit confirmed that harmless error analysis is applied in social security cases, and that it is properly applied in the context of an ALJ's failure to mention a treating physician's treatment notes and additional failure to provide specific and legitimate reasons supported by substantial evidence for rejecting the treating physician's opinion. *Id*. at * 2, 3 ("[H]armless error analysis applies in the social security context, and we find no authority that would lead us to adopt the rule suggested by Marsh to make distinctions where a treating source's medical opinion is not mentioned.") The court stated: "We reject the idea that not mentioning a treating source's medical opinion precludes use of harmless error doctrine, but at the same time, because our law requires 'specific and legitimate reasons that are supported by substantial evidence' for rejecting a treating source's medical opinion, that precedent surely implies that an ALJ must discuss the relevant views of a treating source." *Id.* at * 3.

"ALJ errors in social security cases are harmless if they are 'inconsequential to the ultimate nondisability determination' and ... 'a reviewing court cannot consider [an] error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.'" *Id*. (quoting *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006)).

> [W]here the circumstances of the case show a substantial likelihood of prejudice, remand is appropriate so that the agency can decide whether re-consideration is necessary. By contrast, where harmlessness is clear and not a borderline question, remand for reconsideration is not appropriate.

*Id.* (quoting *McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011)). The Ninth Circuit went on to comment:

> Our precedents do not quantify the degree of certainty needed to conclude that an ALJ's error was harmless, and we would hesitate to suggest a rigid rule for all cases. But it does seem that where the magnitude of an ALJ error is more significant, then the degree of certainty of harmlessness must also be heightened before an error can be determined to be harmless. In other words, the more serious the ALJ's error, the more difficult it should be to show the error was harmless.

*Id.* at * 3.

1          Here, the ALJ did not even mention Dr. Skidmore's assessment limiting Plaintiff to
2   simple, one- and two-step tasks. This assessment contradicts the only other examining source's
3   opinion to assess Plaintiff's mental functional limitations. Dr. Stanfield concluded that Plaintiff
4   could understand, remember and carry out simple, detailed and some complex tasks. (AR 677.)
5   The ALJ did not accept Dr. Stanfield's assessment of Plaintiff's limitations, and instead gave
6   great weight to the two consultative psychologists who reviewed Plaintiff's records, never
7   examined Plaintiff, and filled out a check-the-box form finding Plaintiff had no severe
8   impairments.
9          In sum, the ALJ did not comment on Dr. Skidmore's mental functional assessment
10  limiting Plaintiff to simple, one- or two-step tasks and rejected Dr. Stanfield's assessment that
11  Plaintiff could understand, remember and carry out simple, detailed and some complex tasks in
12  favor of the opinions of two consultants who never examined Plaintiff, only filled out a check-
13  the-box form and, as Plaintiff points out, checked the box indicating that there is insufficient
14  evidence for the medical disposition. (*See* AR 696, 776.) The Commissioner speculates that this
15  box was checked because "the doctors were indicating that Plaintiff had provided insufficient
16  evidence to establish her alleged impairments were severe." (Docs. # 20/21 at 7:25-26.) It is not
17  clear, however, why this box was checked. "The opinion of a nonexamining physician cannot by
18  itself constitute substantial evidence that justifies the rejection of the opinion of either an
19  examining physician or a treating physician." *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1996).
20         While an ALJ may discount a provider's opinion if "based 'to a large extent' on an
21  applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not
22  credible," the ALJ would have had to discuss Dr. Skidmore's assessment and provide this
23  rationale for rejecting it for this to suffice as a specific and legitimate reason for rejecting the
24  assessment. This is not the case here.
25         Therefore, when presented with the opinion of Dr. Skidmore and Dr. Stanfield, along
26  with the assessments of the two non-examining sources, the court cannot "confidently conclude
27  that *no reasonable ALJ*, when fully crediting [Dr. Skidmore's mental functional assessment of
28  Plaintiff], could have reached a different disability determination." *Marsh*, 2015 WL 4153858 at

1  \* 2 (citation and quotation marks omitted) (emphasis added). The court cannot conclude that the
2  ALJ's error was harmless on the basis that the ALJ's determination properly relied on the three
3  other mental functional assessments in the record.
4      The court will now assess the argument that the ALJ's error is harmless because Plaintiff
5  can still perform the work identified by the VE and ALJ. The Commissioner appears to concede
6  that if Dr. Skidmore's assessment is credited, Plaintiff cannot perform her past relevant work
7  as the Commissioner's harmless error argument only asserts that Plaintiff could still perform the
8  jobs of assembler and sub-assembler identified at step five. (Docs. # 20/21 at 9-11.) The court
9  finds this to be the case because each of the jobs identified as past relevant work (AR 36) have a
10 DOT Reasoning Level 3. *See* DOT 238.367-038 (hotel clerk), 1991 WL 672211 (4th ed. 1991);
11 DOT 299.357-014 (telephone solicitor) 1991 WL 672211 (4th ed. 1991); DOT 311.477-030
12 (waitress), 1991 WL 672211 (4th ed. 1991); *see also Zavalin v. Colvin*, 778 F.3d 842, 846-47
13 (9th Cir. 2015) (holding that there is an apparent conflict between the residual functional
14 capacity to perform simple, repetitive tasks and the demands of Reasoning Level 3, that the ALJ
15 is required to reconcile).
16     "In making disability determinations, the Social Security Administration relies primarily
17 on the [DOT] for 'information about the requirements of work in the national economy.'"
18 *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007) (quoting SSR 00-4p at \* 2). The DOT
19 "is the SSA's 'primary source of reliable job information' regarding jobs that exist in the
20 national economy." *Zavalin v. Colvin*, 778 F.3d 842, 845-46 (9th Cir. 2015) (citing *Terry v.*
21 *Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990); 20 C.F.R. § § 416.969, 416.966(d)(1)).
22     The job descriptions in the DOT include a "definitional trailer" that uses a numerical
23 system to identify the abilities a person needs to perform the given job. *See* DOT Appendix C,
24 1991 WL 688702 (4th ed. 1991). The "definitional trailer" includes, *inter alia*, a "Specific
25 Vocational Preparation" (SVP) which is "the amount of lapsed time required by a typical worker
26 to learn the techniques, acquire the information and develop the facility needed for average
27 performance in a specific job-worker situation." *Id*. The SVP considers training "acquired in a
28 school, work, military, institutional, or vocational environment." *Id*. It assigns levels of time

1  ranging from Level 1 (short demonstration only) to Level 9 (over 10 years). *Id*. The "definitional
2  trailer" also addresses "General Educational Development" (GED) which "embraces those
3  aspects of education (formal and informal) which are required of the worker for satisfactory job
4  performance" and "is composed of three divisions: Reasoning Development, Mathematical
5  Development, and Language Development." *Id*. The GED reasoning component ranges from
6  Level 1 (requiring the least ability) to Level 6 (requiring the most ability). *Id*.

7  For purposes of this Report and Recommendation, the court need only address Reasoning
8  Levels 1-3, which are defined as follows:

**LEVEL 1**
Apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.

**LEVEL 2**
Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.

**LEVEL 3**
Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations.

DOT, Appendix C, 1991 WL 688702 (4th ed. 1991).

The GED mathematical component likewise contains six levels, with Level 6 involving the most advanced mathematical skills and Level 1 involving the least involved mathematical skills. *Id*. The GED language component also has six levels (although Levels 5 and 6 are the same) with Levels 5 and 6 requiring the most in terms of abilities to read, write and speak and Level 1 requiring the ability to recognize the meaning of 2,500 (two- or three-syllable) words, read 95-120 words per minute, and print and speak simple sentences. *Id*. The "definitional trailer" also discusses physical demands and contains a guide for occupational exploration, neither of which are germane to this discussion. *Id*.

A majority of district courts within the Ninth Circuit that have addressed the issue have found that the SVP level in a DOT listing does not address whether or not a job entails only simple tasks. *See, e.g., Baker v. Comm'r of Soc. Sec.*, No. 1:13-cv-01350-SAB, 2014 WL 3615497, at * 7 (E.D. Cal. July 21, 2014); *Trujillo v. Colvin*, No. 3:13-cv-0620-SL, 2014 WL 2213218, at * 5 (D. Or. May 27, 2014); *Works v. Comm'r of Soc. Sec. Admin.*, 804 F.Supp.2d

1089 (D. Or.), 2010 WL 358456, at * 4 (W.D. Wash. Aug. 11, 2010); *Stroda v. Astrue*, No. C09-5112BHS, 2010 WL 129814 (W.D. Wash. Jan. 11, 2010); *Xiong v. Comm'r of Soc. Sec. Admin.*, No. 1:09-cv-00398-SMS, 2010 WL 2902508, at * 6 (E.D. Cal. July 22, 2010); *Meissl v. Barnhart*, 403 F.Supp.2d 981, 983 (C.D. Cal. May 25, 2005). Instead, these courts have found that whether a job involves simple tasks is more readily determined by the DOT's GED ratings. *Id*. This is because "[a] job's SVP is focused on the 'amount of lapsed time' it takes for a typical worker to learn the job's duties' while "[a] job's reasoning level ... gauges the minimal ability a worker needs to complete the job's tasks themselves." *Meissl*, 403 F.Supp.2d at 983 (citation omitted); *see also Zavalin v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015) ("the DOT's reasoning levels clearly correspond to the claimant's *ability* because they assess whether a person can 'apply' increasingly difficult principles of rational thought and 'deal' with increasingly complicated problems") (emphasis original). Therefore, the court's analysis will be focused more on the Reasoning Level of the jobs identified at step five, and the other GED components, if appropriate.

Since Dr. Skidmore's assessed limitation would be inconsistent with Plaintiff's past relevant work, the court must now determine whether the ALJ's error in failing to mention or provide specific and legitimate reasons for rejecting Dr. Skidmore's assessment is harmless because Plaintiff can still perform the jobs of assembler and sub-assembler identified at step five even if she were limited to simple, one- and two-step tasks. The limitation to simple, one- or two-step tasks is clearly consistent with Level 1 Reasoning. The issue, therefore, is whether this limitation is consistent with the Level 2 Reasoning requirement of the assembler and sub-assembler jobs identified by the ALJ at step five in this case.

In *Zavalin*, the Ninth Circuit did not specifically address whether a limitation to simple, one- and two-step tasks is consistent with level two reasoning, but only held that Zavalin's limitation to simple, routine tasks presented an apparent conflict with Level 3 reasoning.[4] The court did say, however, that the definition of level two reasoning, "applying common sense to

---

[4] As will be discussed, *infra*, some courts have recognized a difference between a limitation to simple, repetitive or routine tasks, and simple, one- to two-step tasks.

1  carry out detailed but uncomplicated instructions and dealing with problems involving a few
2  variables," was more consistent with Zavalin's limitation to simple, routine tasks than Level 3
3  reasoning. *Zavalin*, 778 F.3d at 847. While Level 2 was "more consistent" to Zavalin's
4  limitation, the court made no finding on the issue of whether the limitation was in fact consistent
5  with Level 2 Reasoning.
6       Most of the district courts in the Ninth Circuit to consider the issue have concluded that a
7  limitation to simple, routine tasks is consistent with Level 2 Reasoning. *See Xiong v.*
8  *Commissioner of Social Sec.*, No. 1:09-cv-00398-SMS, 2010 WL 2902508 (E.D. Cal. July 22,
9  2010) ("Courts within the Ninth Circuit have consistently held that a limitation requiring simple
10 or routine instructions encompasses the reasoning levels of one and two") (citing *Seechan v.*
11 *Astrue*, No. 1:09-cv-00610-GSA, 2010 WL 1812637 (E.D. Cal. May 5, 2010); *Villafana v.*
12 *Astrue*, No. 1:08-cv-01954-GSA, 2010 WL 1286818 (E.D. Cal. Mar. 29, 2010); *Racette v.*
13 *Astrue*, No. 1:08-cv-01645-GSA, 2010 WL 1286786 (E.D. Cal. Mar. 29, 2010); *Stroda v. Astrue*,
14 No. C09-5112BHS, 2010 WL 129814 (W.D. Wash. Jan. 11, 2010); *Erickson v. Astrue*, No.
15 EDCV 09-484-OP, 2010 WL 129677 (C.D. Cal. Jan. 5, 2010); *Sorg v. Astrue*, No. C09-
16 5063KLS, 2009 WL 4885184 (W.D. Wash. Dec. 16, 2009); *Vasquez v. Astrue*, No. CV 08-5305-
17 OP, 2009 WL 3672519 (C.D. Cal. Oct. 30, 2009); *Moua v. Astrue*, No. 2:07-cv-02024-GGH,
18 2009 WL 997104 (E.D. Cal. Apr. 14, 2009); *Angulo v. Astrue*, No. 1:07-cv-0 1681-TAG, 2009
19 WL 817506 (E.D. Cal. Mar. 27, 2009); *Salazar v. Astrue*, No. EDCV 07-0565-MAN, 2008 WL
20 4370056 (C.D. Cal. Sept. 23, 2008); *Isaac v. Astrue*, CIV S-07-0442 GGH, 2008 WL 2875879
21 (E.D. Cal. July 24, 2008); *Squier v. Astrue*, No. EDCV 06-1324-RC, 2008 WL 2537129 (C.D.
22 Cal. June 24, 2008); *Howard v. Astrue*, EDCV 07-1291 RNB, 2008 WL 3201221 (C.D. Cal.
23 Aug. 7, 2008)); *see also Baker v. Comm'r of Soc. Sec.*, No. 1:13-cv-01350-SAB, 2014 WL
24 3615497, at *7 (E.D. Cal. July 21, 2014); *Trujullo v. Colvin*, No. 3:13-cv-0620-SI, 2014 WL
25 2213218, at * 5 (D. Or. May 27, 2014); *McGarrah v. Colvin*, No. 2:12-cv-2296 AC, 2014 WL
26 710988, at * 9 (E.D. Cal. Feb. 21, 2014); *Myers v. Colvin*, No. 1:12-cv-00378-LJO-GSA, 2013
27 WL 3481689, at * 16 (E.D. Cal. July 10, 2013), adopted by No. 12-cv-378 LJO GSA, 2013 WL
28 4400104 (E.D. Cal. Aug. 14, 2013); *Soto-Rojas v. Comm'r of Soc. Sec. Admin.*, Civil No. 09-

6218-KI, 2011 WL 39141, at * 7-8 (D. Or. Jan. 6, 2011); *Hernandez v. Astrue*, 1:09-cv-1805 SKO, 2010 WL 5113103, at * 4 (E.D. Cal. Dec. 9, 2010).

There is not a resounding consensus, however, as to whether limitation to simple, one- and two-step tasks is consistent with Level 2 Reasoning. Again, Level 1 requires the ability to: "Apply commonsense understanding to carry out s*imple one- or two-step instructions*" and "[d]eal with standardized situations with *occasional or no variables* in or from these situations encountered on the job." DOT, Appendix C, 1991 WL 688702 (4th ed. 1991) (emphasis added). Level 2 Reasoning, on the other hand, requires the ability to: "Apply commonsense understanding to carry out *detailed but uninvolved* written or oral instructions. Deal with problems involving *a few concrete variables* in or from standardized situations." *Id.* (emphasis added). It is clear that the limitation to simple, one- and two-step tasks fits squarely within Level 1 Reasoning's definition. A reading of Reasoning Level 2's definition demonstrates that a limitation to simple, one- or two-step tasks *may* be consistent with a job designated Reasoning Level 2, but the definition which mentions "detailed but uninvolved" instructions and dealing with "a few concrete variables" demonstrates that this may not always be the case.

In other words, a Level 2 Reasoning job may require simple tasks, but the job may not necessarily be limited to one- or two-step tasks. *See Pound v. Astrue,* EDCV 11-2039-JPR, 2012 WL 4513638, at * 4 (C.D. Cal. Oct. 2, 2012) ("reasoning level two is meant to require an aptitude greater than being limited to carrying out one- or two step instructions"); *Niemeyer v. Astrue,* EDCV 11-1730-MLG, 2012 WL 1885085, at * 2 (C.D. Cal. May 23, 2012) (limitation to one- to two-step instructions would ordinarily preclude claimant from performing jobs with a Level 2 reasoning requirement); *Hamlett v. Astrue,* EDCV 11-03818-JEM, 2012 WL 469722, at * 4 (C.D. Cal. Feb. 14, 2012);  *Grigsby v. Astrue*, CV 08-1413 AJW, 2010 WL 309013, at * 2 (C.D. Cal. Jan. 22, 2010) ("The restriction to jobs involving no more than two-step instructions is what distinguishes Level 1 reasoning from Level 2 reasoning."); *see also Hann v. Colvin*, 2014 WL 1382063, at * 18 (N.D. Cal. Mar. 28, 2014) (limitation to one to two-step instructions is not necessarily consistent *only* with Reasoning Level 1, implying that it is not always consistent with Reasoning Level 2).

The court will now look to the DOT descriptions for the jobs identified by the ALJ at step five to determine whether the descriptions clearly establish that the job requires only simple, one- to two-step tasks. The job of assembler identified by the ALJ at step five is described as follows:

> Performs any combination of following repetitive tasks on assembly line to mass produce small products, such as ball bearings, automobile door locking units, speedometers, condensers, distributors, ignition coils, drafting table subassemblies, or carburetors: Positions parts in specified relationship to each other, using hands, tweezers, or tongs. Bolts, screws, clips, cements, or otherwise fastens parts together by hand or using handtools or portable powered tools. Frequently works at bench as member of assembly group assembling one or two specific parts and passing unit to another worker. Loads and unloads previously setup machines, such as arbor presses, drill presses, taps, spot-welding machines, riveting machines, milling machines, or broaches, to perform fastening, force fitting, or light metal-cutting operation on assembly line. May be assigned to different work stations as production needs require or shift from one station to another to reduce fatigue factor. May be known according to product assembled.

DOT 706.684-022, 1991 WL 679050 (4th ed. 1991).

> The job of sub-assembler is described as:
> Performs any of following tasks to assemble electrical equipment and parts, such as armature cores, coils, electric motors, and switches: Tapes lead wires to coils to facilitate soldering. Solders coil and lead wires, using soldering iron. Trims leads and positions parts in specified relationship to each other, using hands and handtools. Bolts, screws, clips, cements, and fastens parts together, using hands, handtools, or portable powered tools. May remove burrs from parts prior to assembly, using file or electric grinder.

DOT 729.684-054, 1991 WL 679729 (4th ed. 1991).

There is some ambiguity in these DOT descriptions that precludes the court from determining whether these jobs are limited to one- and two-step tasks so as to be consistent with Dr. Skidmore's limitation. While the assembler job frequently involves working on assembling one or two specific parts, the remainder of the description is not clear as to how many steps are involved in such tasks. The sub-assembler job description appears to describe tasks that contain more than one to two steps.

Therefore, the court cannot determine whether substantial evidence supports a finding that Plaintiff could perform the work identified by the ALJ at step five if Dr. Skidmore's assessment were credited and Plaintiff were limited to simple, one- and two-step tasks. As such,

the court cannot conclude the ALJ's error in failing to discuss or provide specific and legitimate reasons for rejecting Dr. Skidmore's assessment is harmless on this basis.

For these reasons, this matter should be remanded to the ALJ for further proceedings to consider and comment on Dr. Skidmore's assessment. The court declines to recommend reversal and remand for the payment of benefits because, as the court discussed, *supra*, even if Dr. Skidmore's assessment is credited as true, it is not clear whether or not Plaintiff could still perform the jobs identified by the ALJ at step five.

## IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that Plaintiff's Motion for Reversal and/or Remand (Doc. # 19) is **GRANTED** and this matter should be **REMANDED** to the ALJ to conduct further proceedings consistent with this Report and Recommendation;

**IT IS FURTHER RECOMMENDED** that the Commissioner's Cross-Motion to Affirm (Doc. # 20) be **DENIED**.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of the District Court's judgment.

DATED: August 4, 2015

_William G. Cobb_
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE